# IN THE COURT OF APPEALS OF IOWA

No. 17-0081
Filed May 3, 2017

**IN THE INTEREST OF J.S. and R.D.,**
**Minor Children,**

**A.S., Mother,**
    Appellant,

**R.D., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Marshall County, Paul G. Crawford,

District Associate Judge.


A mother and father appeal separately from the order terminating their

parental rights. **AFFIRMED ON BOTH APPEALS.**


Breanna M. Nelson of Grimes, Buck, Schoell, Beach & Hitchins,

Marshalltown, for appellant mother.

Jennie L. Wilson-Moore of Wilson Law Firm, Marshalltown, for appellant

father.

Thomas J. Miller, Attorney General, and David M. Van Compernolle,

Assistant Attorney General, for appellee State.

Mary Cowdrey of State Public Defender's Office, Marshalltown, for minor

children.


Considered by Mullins, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

A mother and father separately appeal the termination of their parental rights. The mother claims she received deficient notice concerning the termination hearing and exceptions should have been applied to preclude termination. The father claims he should have been granted an extension of time and exceptions should have been applied. We find the termination of the mother's rights was not precluded by failure to give proper statutory notice, the father should not be granted an extension of six months, and no exceptions should be applied to either party. We affirm the juvenile court's termination of parental rights.

## I. Background Facts and Proceedings

J.S. was born in July 2011, and R.D. was born in October 2012.[1] The children were brought to the attention of the Iowa Department of Human Services (DHS) due to the mother's inability to properly supervise the children. During DHS's assessment, the mother assaulted the maternal grandmother in front of the children. A no-contact order was issued and the children were placed in the care of the maternal grandmother. A child-in-need-of-assistance (CINA) petition was filed for both children and both the mother and father stipulated to the petition. The mother was uninvolved during much of the CINA and termination proceedings and did not contact her attorney between the CINA adjudication and the dispositional hearing.

A permanency hearing was held February 25, 2016, at which neither the father nor mother appeared. The parents' attorneys reported they had had no

---

[1] Only R.D.'s father is involved in this appeal.

contact with either parent. After a DHS worker testified neither parent had responded to telephone calls or letters seeking their involvement in services offered to improve parenting and address mental-health and substance-abuse concerns, a petition for termination of parental rights was filed.

The mother entered substance-abuse treatment in Waterloo, but was unsuccessfully discharged. She then participated in outpatient treatment in Marshalltown and worked part time while living at a Youth and Shelter Services facility. The mother missed a small number of drug tests and admitted to a relapse a few weeks prior to the termination hearing. During the period of her relapse she admitted to visiting the children but testified she did not feel under the influence at the time of the visit. The mother also tested positive for methamphetamine and marijuana near the time of the termination hearing.

The father testified he had previously used methamphetamine two or three times a week, but he had not used the drug since December 2015. He also testified the extent of his interaction with R.D. in the year leading up to the termination hearing was about four hours total. Between January and March 2016, he stopped by the maternal grandmother's house four or five times and talked with R.D. for ten to fifteen minutes on each occasion. He testified he stopped visiting because he felt uncomfortable at the grandmother's house. The father was employed and paid $114.00 a month in child support for R.D. He had also given the child birthday and Christmas presents.

At the time of the hearing, the father was not living in a DHS-approved residence. At a family team meeting on September 14, 2015, the father stated

he was not ready to be involved with R.D. From the meeting in September until the termination hearing in August, the father only contacted DHS twice.

The termination hearing was held August 25, 2016, and was continued and concluded September 12. The father was drug tested at the time of the hearing and told the judge he had no doubt the test would be clean. The test was positive for marijuana. Both parents' parental rights were terminated on January 9, 2017. Both parents now separately appeal.

## II. Standard of Review

The scope of review is de novo in termination cases. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Clear and convincing evidence is needed to establish the grounds for termination. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Where there is clear and convincing evidence, there is no serious or substantial doubt about the correctness of the conclusion drawn from the evidence. *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002). We give weight to the juvenile court's findings of fact, but are not bound by them. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). The highest concern in termination proceedings is the best interests of the child. *In re L.L.*, 459 N.W.2d 489, 493 (Iowa 1990).

## III. Termination

The mother's parental rights to J.S. and R.D. were terminated pursuant to Iowa Code section 232.116(1)(e), (f), and (h) (2016), and the father's rights to R.D. were terminated pursuant to section 232.116(e) and (h). The parents only claim termination was inappropriate under subsection (e). When a ground for termination is not disputed, we need not discuss if termination on that ground is appropriate. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Therefore, we affirm the

terminations on the unchallenged grounds and will only discuss the mother's claim that notice was deficient, the father's claim for an extension of time, and both parents' claims for exceptions.

### IV. Notice

The mother claims she did not receive proper notice, and as a result, her due process rights were violated. Iowa Code section 232.112(1) requires reasonable notice be given to parties involved in a termination of parental rights hearing. A party must be personally served at least seven days before the hearing or fourteen days before the hearing if the service is by certified mail. Iowa Code § 232.112(3). The mother was personally served only three days before the termination hearing.

However, the mother appeared at the hearing having been located and personally served outside of the statutory timeframe. The mother had prior knowledge of the date and had already begun to prepare for the hearing with her attorney when served. Additionally, her attorney had proper notice and the mother has failed to allege any prejudice, and therefore, termination was proper.

### V. Extension

The father claims the juvenile court improperly denied his request for an additional six months to allow him to assume care of R.D. Our supreme court has held we must grant a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills." *C.B.*, 611 N.W.2d at 494. However, this patience is not unlimited, as it can quickly become a hardship for the children involved. *In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989).

The father claims he has made significant progress. He stated he has consistent employment, suitable housing, and no longer uses illegal substances. On the day of the termination hearing the father tested positive for marijuana use after swearing under oath the test would be clean. The father began the process of having his new home's suitability assessed only after the first day of the termination hearing. The father had been living with his sister and her family, and had recently moved. He stated he would fully cooperate with DHS on having background checks for any roommates.

The father had only begun to show an interest in a relationship with R.D. during the six months prior to the termination hearing, which the juvenile court described as "drive by chats." This contact totaled approximately one hour and fifteen minutes in the six months leading up to the hearing. The father has attempted to begin the process in the last months before termination. His efforts "are simply too late." *See C.B.*, 611 N.W.2d at 495.

DHS also reported a gradual visitation process would be necessary to determine if the father is a fit parent. This process would take at least three months. Gradual increases in visitation had not begun at the time of the termination hearing, but the father had not requested or shown an interest in starting the process. We agree with the juvenile court's assessment that while "theoretically, father could still get the job done within six months," his history of noninvolvement and participating only at the last moment "has made success appear unrealistic." An additional six months would not resolve the issues requiring termination.

**VI. Exceptions**

The juvenile court may decide not to terminate parental rights if any exception set out in Iowa Code section 232.116(3) is shown. "The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011). The mother and father each claim the rights should not have been terminated as the children are placed with a relative. The mother also claims her bond with the children is so strong as to preclude termination.

The children are currently in the care of the maternal grandmother who received her foster care license. The parents claim placement with a relative should preclude termination of their parental rights. We disagree. The juvenile court noted the grandmother was best suited to providing for the children's needs, long-term nurturing, and the growth of the children. The mother also assaulted the grandmother in front of the children. We determine the exception should not be applied.

The mother also claims her bond with the children, especially J.S., should preclude termination. She points to emotional issues J.S. has exhibited at times she was not present or involved in the children's lives. While J.S. did exhibit emotional issues and termination may cause emotional distress for the children, the increased stability of a caring, capable, and certain home will serve the children's best interest more than the continued uncertainty of the mother's care.

**AFFIRMED ON BOTH APPEALS.**